UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIDIAN SIMPSON,

               **Plaintiff,**               CIVIL ACTION NO. 17-cv-14098

          **v.**                      DISTRICT JUDGE MATTHEW F. LEITMAN

**COMMISSIONER OF**             MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

               **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Davidian Simpson seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 11).  This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 10) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 11) be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 7, 2012, alleging that he has been disabled since January 1, 2001, due to sleep apnea, a learning disability, nerve damage, and carpal tunnel syndrome. (TR 372-88, 415, 418.) The Social Security Administration denied Plaintiff's claims on May 1, 2013, and Plaintiff requested a *de novo* hearing. (TR 126-57, 209-14.) On September 4, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Kevin W. Fallis. (TR 41-74.) The ALJ issued an unfavorable decision on December 22, 2014, but the Appeals Council remanded the matter for further consideration of the findings and opinion of the consultative physical examiner, Michael Geoghegan, D.O., Plaintiff's maximum residual functional capacity (RFC), and the effects of the RFC on Plaintiff's occupational base. (TR 158-84.) On remand, Plaintiff appeared with a representative and testified at another hearing before the ALJ on November 9, 2016. (TR 75-118.) The ALJ then issued another unfavorable decision on December 27, 2016, which the Appeals Council declined to review. (TR 1-6, 15-32.) Plaintiff subsequently commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff included a "Statement of Facts" in his brief, which reflects the procedural history of this matter. (Docket no. 10 at 6-8.) The ALJ set forth a detailed, factual summary of Plaintiff's medical record and the hearing testimony. (TR 23-29, 31.) Defendant set forth a short paragraph of facts and otherwise adopts the ALJ's recitation of the facts. (Docket no. 11 at 5.) Having conducted an independent review of Plaintiff's medical record and the hearing transcripts, the

undersigned finds that there are no material inconsistencies between the record and the ALJ"s recitation thereof.   Therefore, in lieu of re-summarizing the record, the undersigned will incorporate the ALJ's factual recitation by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2001, and that Plaintiff suffered from the following severe impairments: obesity, status post left hand injury with residual pain and weakness, carpal tunnel syndrome on the left, chronic kidney disease, arteriosclerosis, obstructive sleep apnea, asthma, chronic obstructive pulmonary disease (COPD), gout, borderline intellectual functioning, learning disorder, polysubstance use/dependence disorder, anxiety, and depression.  (TR 17-18.)  The ALJ also found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 18-22.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can lift no more than 50 pounds occasionally lift and carry up to 10 pounds frequently with the dominant right upper extremity.  The claimant can occasionally lift 10 pounds with the left upper extremity.  The claimant can sit for 2 hours at one time and for a total of 7 hours in an 8-hour workday.  The claimant can stand for 20 minutes at one time and for a total of 3 hours in an 8-hour workday.  The claimant can walk for 20 minutes at one time and for 1 hour total during an  8-hour workday.  The claimant can frequently operate foot controls.  The claimant can never climb ladders, ropes, or scaffolds.  The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  The claimant can frequently perform reaching, including overhead; handling; fingering; feeling; pushing; and pulling with the right upper extremity.  The claimant can occasionally perform reaching, including overhead; handling; fingering; feeling; pushing; or pulling with the left upper extremity.  The claimant can never tolerate exposure to unprotected heights.  The clamant can occasionally tolerate exposure to extreme cold, extreme heat, and vibrations.  The

claimant can frequently tolerate exposure moving mechanical parts, humidity and wetness, and dust, odors, fumes, and pulmonary irritants. The claimant can frequently operate a motor vehicle. The claimant can tolerate loud noise such as heavy traffic. The claimant requires work that is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions and routine workplace changes. The claimant can tolerate only occasional and superficial interaction with the public and coworkers.

(TR 22-30.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 30-32.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2001, through the date of the decision. (TR 16, 32.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524,

536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

## B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by

substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

###  C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ "failed to meet his step five burden of providing evidence that demonstrates that other work exists in significant numbers in the national economy that the Plaintiff can do;" (3) the ALJ failed to give good reasons for giving little weight to the opinion of Plaintiff's treating physician, Ahmed Arif, M.D.; and (4) the ALJ's "decision to adopt Dr. Geoghegan's opinion in regards to the physical

portion of the [RFC] assessment is not supported by substantial evidence when the [ALJ] fails to address the conflicts in the two reports and fails to include all of the limitations contained in the two reports." (Docket no. 10 at 5, 9-22.)

1. *The ALJ's Assessment of the Medical Opinion Evidence*

a. <u>Ahmed Arif, M.D.</u>

Plaintiff argues that the ALJ failed to give good reasons for assigning "little weight" to the opinion of his treating physician, Ahmed Arif, M.D. (Docket no. 10 at 17-19.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner

has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ summarized and assessed Dr. Arif's opinion as follows:

Ahmed Arif, M.D., one of the claimant's primary care physicians, completed a medical source statement dated August 15, 2016. The claimant could lift and carry 10 pounds occasionally and less than 10 pounds frequently, although he could not perform any frequent lifting with the left hand. He could stand and walk for less than 2 hours in an 8-hour workday. He could sit for less than 6 hours in an 8-hour workday and he needed to periodically alternate sitting and standing to relieve pain or discomfort. The claimant was limited in his ability to push or pull in the upper and lower extremities due to neuropathy and generalized weakness of the left hand, carpal tunnel syndrome, gout, and vascular disease in the lower extremities. The claimant could never climb ramps, stairs, ladders, ropes, or scaffolds. He could

never crouch.  He could occasionally balance, kneel, crawl, and stoop.  The claimant could occasionally perform reaching in all directions, handling, fingering, and feeling bilaterally.  He had blurred vision from hypertension and elevated blood sugar.  The claimant had depression and anxiety that caused difficulty with concentration and attention.  He needed to avoid temperature extremes, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals, and gases due to breathing issues (Exhibit 35F).

The undersigned assigns little weight to the opinion of Dr. Arif regarding the claimant's physical ability to perform basic work activities.  The limitations identified by Dr. Arif are not supported by examinations, objective testing, or other medical opinions.  It does not appear that Dr. Arif actually examined the claimant but merely cosigned treatment notes prepared by nurse practitioners (Exhibits 19F and 27F).  The primary care physician's opinion regarding limitations caused by mental impairments is unreliable as outside the physician's specialty field of treatment.

(TR 26.)

Here, it is evident that the ALJ considered and discussed the regulatory factors in assessing Dr. Arif's opinion.  For example, the ALJ discussed the nature and extent of Plaintiff's treatment relationship with Dr. Arif and the frequency of examination by noting that it does not appear that Dr. Arif actually examined Plaintiff but rather merely cosigned treatment notes prepared by nurse practitioners.  He discussed the supportability of Dr. Arif's opinion by noting that the limitations identified by Dr. Arif were not supported by examinations, objective testing, or other medical opinions.  And the ALJ discussed Dr. Arif's specialization by noting that Dr. Arif was Plaintiff's primary care physician and that his opinion regarding limitations caused by mental impairments was outside Dr. Arif's specialty field of treatment.

Plaintiff argues that the ALJ did not cite any examination findings, objective testing, or other medical opinions that are inconsistent with Dr. Arif's opinions.  (Docket no. 10 at 17.)  But the ALJ did not reason that Dr. Arif's opinion was inconsistent with examination findings, objective testing, or other medical opinions, he reasoned that Dr. Arif's opinion was not supported by any examination findings, objective testing, or other medical opinions.  And while the ALJ did

9

not discuss the inconsistency of Dr. Arif's opinion with the record evidence, his failure to do so is not erroneous, as the regulations do not require an ALJ to conduct an "exhaustive factor-by-factor analysis" to satisfy the treating-source rule; the regulations expressly require only that the ALJ's decision include "good reasons" for the weight given. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Plaintiff also argues that the ALJ did not support his allegation that Dr. Arif did not actually examine Plaintiff but merely cosigned treatment notes prepared by nurse practitioners. (Docket no. 10 at 17.) Plaintiff is blatantly incorrect in this regard. The ALJ explicitly cited Plaintiff's treatment records, exhibits 19F and 27F, an independent review of which reveals that the ALJ was correct – there is no indication in the records that Dr. Arif examined Plaintiff; the only time his name appears in the records is as "chart cosigner," while the records indicate that the medical services Plaintiff received were performed by a nurse practitioner. (*See, e.g.,* TR 1294.) Notably, Plaintiff does not assert or provide any evidence that Dr. Arif did examine him. Plaintiff seemingly argues that the ALJ should not have discounted Dr. Arif's opinion on the basis that he did not examine Plaintiff because "[i]t is common in today's medical environment for P.A.'s [sic] to do much of the patient care and charting under the supervision and instruction of medical doctors." (Docket no. 10 at 17.) Regardless of whether this is true, the regulations require ALJs to consider the frequency of examination in assessing the opinions of treating physicians. Thus, to the extent that Dr. Arif is properly considered to be Plaintiff's treating physician even though there is no evidence that he examined Plaintiff, the ALJ properly considered, both procedurally and substantively, the apparent fact that Dr. Arif did not examine Plaintiff in assessing and discounting Dr. Arif's opinion.

Plaintiff further argues that the ALJ erred in finding that Dr. Arif's opinion regarding Plaintiff's mental limitations was unreliable as outside Dr. Arif's specialty field of treatment. (Docket no. 10 at 18-19.)  Plaintiff argues that primary care physicians frequently treat patients with mental impairments.  He also argues that while a primary care physician's specialization is one factor that may be weighed in assessing a medical opinion, it is not the only factor, and it is certainly not exclusionary.  Additionally, Plaintiff argues that the "absurdity" of the ALJ's position regarding Dr. Arif's opinion on Plaintiff's mental impairments is demonstrated by the ALJ's adoption of Dr. Geoghegan's opinion regarding Plaintiff's kidney disease, arteriosclerosis, sleep apnea, asthma, COPD, and gout, because all of those impairments are clearly outside Dr. Geoghegan's specialty of orthopedic surgery.

Plaintiff's arguments in this regard are unsupported and without merit.  Plaintiff has cited no authority to support his argument that an ALJ errs by discounting a treating physician's opinion regarding mental impairments based on a lack of specialization.  And it is evident, as discussed above, that Dr. Arif's specialization was not the only factor that the ALJ considered in assessing Dr. Arif's opinion.  Lastly, as Defendant points out, Dr. Geoghegan's specialty is not indicated in the record evidence.  (*See* docket no. 11 at 12 (citing TR 626-33, 1360-72).)

As discussed above, the ALJ complied with the treating physician rule by sufficiently considering and discussing the regulatory factors in assessing Dr. Arif's opinion and assigning it little weight.  Moreover, the ALJ's reasons for discounting Dr. Arif's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the ALJ gave to Dr. Arif's opinion, and they therefore constitute good reasons under the regulations.  Accordingly, Plaintiff's Motion should be denied with respect to the ALJ's assessment of Dr. Arif's opinion.

b.      Michael Geoghegan, D.O.

Michael Geoghegan, D.O. performed two consultative physical examinations of Plaintiff at the agency's request, on April 17, 2013, and June 8, 2016.  (TR 626-33, 1360-72.)  The ALJ summarized and assessed Dr. Geoghegan's opinions regarding Plaintiff's functional limitations as follows:

> [On April 17, 2013,] Dr. Geoghegan opined that, until the claimant underwent further physical therapy or evaluation by a hand surgeon, he would likely be restricted with the use of his left upper extremity for lifting, pulling, pushing, or carrying due to the significant decrease in left hand grip strength.  He appeared to be losing the ability to use the left fingers for fine manipulation tasks.  He had the ability in the right upper extremity for lifting, pulling, pushing, and carrying.  The claimant had the use of the fingers for fine manipulation tasks and there was full grip strength in the right hand.  The consultative examiner added that the claimant might benefit from limiting his ability to use heavy machinery or motorized vehicles until his excessive daytime sleepiness due to sleep apnea was under control (Exhibit 9F).

> [On June 8, 2016,] Dr. Geoghegan opined that the claimant could lift and carry up to 10 pounds occasionally on the left.  He could lift and carry up to 10 pounds frequently and up to 50 pounds occasionally on the right.  He could sit for 2 hours at one time and for a total of 7 hours in an 8-hour workday.  The claimant could stand for 20 minutes at one time and for a total of 3 hours in an 8-hour workday. He could walk for 20 minutes at one time and for a total of one hour in an 8-hour workday.  The claimant could occasionally perform reaching, including overhead; handling; fingering; feeling; pushing; and pulling on the left.  He could frequently operate bilateral foot controls.  The claimant could never climb ladders or scaffolds. He could occasionally climb stairs and ramps, balance, stoop, knees, crouch, and crawl.  He could never tolerate exposure to unprotected heights.  The claimant could occasionally tolerate exposure to extreme cold, extreme heat, and vibrations.  He could frequently operate a motor vehicle and tolerate exposure to moving mechanical parts, humidity and wetness, and dust, odors, fumes, and pulmonary irritants.  The claimant could tolerate loud noise (Exhibit 29F).

> The undersigned assigns significant weight to the opinion of Dr. Geoghegan regarding the claimant's physical ability to perform basic work activities, as it is wholly consistent with the medical evidence of record.  This opinion is supported by examinations, objective testing, and other medical opinions.  The undersigned has adopted this opinion in regards to the physical portion of the residual functional capacity.

(TR 26-27.)

Plaintiff argues that the ALJ's decision to adopt Dr. Geoghegan's opinion is not supported by substantial evidence because he failed to address the conflicts in the two reports and failed to include all of the limitations contained in the two reports.  (Docket no. 10 at 19-22.)   Plaintiff, however, does not develop these arguments.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted)  ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").  Indeed, it is the role of the ALJ to weigh the evidence and resolve any conflicts therein.  *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  But as Defendant points out, Plaintiff cites no authority that required the ALJ to explicitly discuss the conflicts between Dr. Geoghegan's reports.  (*See* docket no. 11 at 13.)  Plaintiff also does not identify which of the limitations assessed by Dr. Geoghegan the ALJ failed to adopt or explain why the ALJ should have adopted them.  Furthermore, Plaintiff fails to cite any authority that requires an ALJ to adopt each and every limitation from a physician's opinion that he assigns great or significant weight.  In fact, courts have taken the opposite position on this issue.  *See, e.g., Alvarado v. Colvin*, No. 3:15cv102, 2016 WL 825654, at *5 (N.D. Ohio Mar. 3, 2016) (quoting *Lambert-Newsome v. Astrue*, No. 11-1141-CJP, 2012 WL 2922717 at *6 (S.D. Ill. July 17, 2012) ("the fact that [the ALJ] gave 'great weight' to [the examiner's] opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner"); *see also Irvin v. Astrue*, No. EDCV 11-23 AJW, 2012 WL 870845, at *2–3 (C.D. Cal. Mar. 14, 2012) (finding that although the ALJ gave great weight to a consultative examiner's opinion, he did not err in implicitly rejecting one limitation from that opinion).

It is Plaintiff's position that Dr. Geoghegan's April 2013 evaluation should carry more weight than his June 2016 evaluation because the former is supported by more detailed medical evidence of record.  (Docket no. 10 at 21.)  Plaintiff does not cite the medical evidence that he asserts supports his position.  Moreover, while Dr. Geoghegan's April 2013 opinion is expressed in vague terms, it is evident that Dr. Geoghegan's June 2016 opinion includes all of the functional limitations that he assessed in April 2013, but for one.  For example, in April 2013, Dr. Geoghegan opined that until Plaintiff underwent further physical therapy by a hand surgeon, he would likely be restricted with the use of his left upper extremity for lifting, pulling, pushing, or carrying, and in June 2016, Dr. Geoghegan opined that Plaintiff's ability to use his left upper extremity was limited to lifting or carrying up to ten pounds occasionally and only occasional pushing and pulling.  Dr. Geoghegan also opined in April 2013 that Plaintiff appeared to be losing the ability to use his left fingers for fine manipulation tasks, and in June 2016, he opined that Plaintiff was limited to only occasional handling, fingering, and feeling with his left upper extremity.

The only limitation from Dr. Geoghegan's April 2013 opinion that did not appear in his June 2016 opinion was his suggestion that Plaintiff "might benefit from limiting his ability to use heavy machinery or motorized vehicles until his excessive daytime sleepiness due to sleep apnea was under control."  In June 2016, Dr. Geoghegan opined that Plaintiff could frequently operate a motor vehicle and tolerate exposure to moving mechanical parts.  Plaintiff does not say why Dr. Geoghegan's former opinion carries more weight in this regard, that is, he does not assert any reason why he cannot frequently operate a motor vehicle or be exposed to moving mechanical parts.  Defendant suggests that the reason for Dr. Geoghegan's change in opinion is because Plaintiff did not complain of daytime sleepiness due to his sleep apnea in June 2016.  (Docket no. 17-18.)  Furthermore, any error committed by the ALJ in failing to include this limitation in

Plaintiff's RFC is harmless, as the Dictionary of Occupational Titles (DOT) description of the surveillance system monitor position that the ALJ found that Plaintiff could perform does not indicate that the job requires the use of motor vehicles or moving mechanical parts. (*See* docket no. 10 at 14 n.1.)

The remainder of Plaintiff's argument regarding the ALJ's assessment of Dr. Geoghegan's opinions focuses on the perceived conflicts between Dr. Geoghegan's reports. (Docket no. 10 at 20-21.) It is not the function of this Court to resolve conflicts in the evidence. *See Brainard, supra.* Nevertheless, the Court notes that the conflicts asserted by Plaintiff are actually differences in Dr. Geoghegan's physical examination findings. For example, in April 2013, testing revealed that Plaintiff had less than 5% of grip strength remaining in the left hand, a full range of motion in his left shoulder, elbow, and wrist, and negative Phalen's and Tinel's results in his left hand. In June 2016, Plaintiff had 10% grip strength remaining on the left, reduced range of motion in his left shoulder, elbow, and wrist, and positive Phalen's and Tinel's test results. (TR 628-30, 1361-62.) While Dr. Geoghegan assessed substantially similar restrictions to Plaintiff's left upper extremity in his April 2013 and June 2016 opinions, the restrictions morphed from vague restrictions in April 2013 ("would likely be restricted") to defined restrictions in June 2016 (occasional lifting and carrying of up to ten pounds; occasional pushing and pulling). The differences in Dr. Geoghegan's exam findings correspond with the differences in his opinions. For the above stated reasons, Plaintiff's Motion regarding the ALJ's assessment of Dr. Geoghegan's opinions should be denied.

### 2.    *The ALJ's Assessment of Plaintiff's RFC*

Plaintiff argues that the ALJ's assessment of his RFC, as restrictive as it is, is not supported by substantial evidence. (Docket no. 10 at 9-13.) The RFC assessment is the Commissioner's

ultimate finding about the claimant's ability to perform work-related activities.  Social Security

Ruling (SSR) 96-5p, 1996 WL 374183, at *5.  It is defined as the most, not the least, the claimant

can do despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ derives the RFC

after considering the medical and other relevant evidence in the record.  *Id*.  He must support the

RFC by including a narrative discussion describing how the evidence supports his conclusions and

providing citations to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL

374184, at *7.  In determining the RFC, the ALJ must discuss the claimant's ability to perform

sustained work activities in an ordinary setting on a regular and continuing basis.  *Id.*  The ALJ

may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is

supported by and not inconsistent with the other substantial evidence of record.  However, at all

times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation

to determine the RFC based on the evidence he finds credible.

Plaintiff bears the burden of proving the existence and severity of limitations caused by his

impairments through step four of the sequential evaluation process.  *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 474 (6th Cir. 2003); *Her*, 203 F.3d at 391.  Accordingly, it is Plaintiff's burden to

prove that he has a more restrictive RFC than that assessed by the ALJ.  *See Jordan v. Comm'r of

Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*, 203 F.3d at 392).

Plaintiff argues that the ALJ's RFC assessment does not account for his need to elevate his

legs to heart level during normal work hours.  (Docket no. 10 at 11.)  He argues that the ALJ

incorrectly reasoned that Plaintiff's alleged need to "constantly elevate his legs to heart level is not

indicated in the medical evidence of record."  (*Id*. (citing TR 29).)  In support, Plaintiff cites

records that include his subjective statements that he has tried lying down to relieve his symptoms

of gout and indicating that Plaintiff sought treatment for edema in January and February 2016.

(TR 910, 934, 941.) These records also indicate, however, that Plaintiff's exam was negative for leg swelling and calf pain. (TR 910, 917.) He also cites a record from a January 15, 2016 visit to the emergency room, at which he was diagnosed with scabies and mild cellulitis on his thighs and received discharge instructions to elevate his wound above his heart as often as possible to treat the cellulitis. (TR 1004-24.) Plaintiff also received a diagnosis of peripheral vascular disease in February 2016 and was advised to elevate his legs above the level of his heart. (TR 1425-26.) Additional records cited appear to indicate that the leg wound persisted to May 2016, stating that Plaintiff had had chronic venous statis with chronic venous ulcers on his right lower extremity for the past four months. (TR 1158-64, 1174, 1305.) Despite these records, Plaintiff does not show that these conditions or the limitations related thereto, *i.e.*, the need to elevate his legs, persisted for a continuous period of at least twelve months, as is necessary to establish a severe impairment. *See* 20 C.F.R. §§ 404.1520, 404.1509. Indeed, the ALJ did not find that Plaintiff had a severe impairment related to his leg problems in early 2016, and Plaintiff rightly does not challenge the ALJ's step-two determination. Accordingly, the ALJ's failure to assess that Plaintiff needed to elevate his legs as part of Plaintiff's RFC is not erroneous.

Plaintiff also argues that the ALJ failed to include certain limitations in the RFC related to his moderate limitations in maintaining concentration, persistence, and pace. (Docket no. 10 at 12.) The ALJ explained his assessment of Plaintiff's mental RFC as follows:

> Due to moderate limitations in maintaining concentration, persistence, and pace, as well as limited cognitive capabilities associated with a learning disorder, borderline intellectual functioning, and polysubstance dependence, the claimant requires work that is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions and routine workplace changes. The claimant can tolerate only occasional and superficial interaction with the public and coworkers because of moderate limitations in maintaining social functioning.

(TR 30.)  Plaintiff argues that the RFC does not sufficiently account for his moderate limitations in maintaining concentration, persistence, and pace because it does not address how much time Plaintiff would be off task on a regular and continuing basis.  (Docket no. 10 at 12.)  Plaintiff also argues that the RFC is insufficient because case law indicates that moderate limitations in concentration, persistence, and pace could equal anywhere from 20% to 50% loss of function.  (*Id.* (citing cases).)  Plaintiff further argues that the RFC may still permit jobs that involve quotas, staying on task, and working at a consistent pace.  *Id.*  Plaintiff, however, does not assert that he actually has these functional limitations as a result of his moderate limitations in concentration, persistence, and pace.  Moreover, Plaintiff cites no medical opinions that assess these limitations. Thus, Plaintiff has failed to meet his burden of showing that the ALJ should have included these limitations in his RFC.

Additionally, Plaintiff argues the ALJ's RFC "failed to indicate why it did not limit the Plaintiff to 'low stress' . . . '1 to 2 step routine unskilled tasks with <u>no</u> public dealings . . . ', as recommended by Dr. Kaul."  (Docket no. 12 at 13.)  Plaintiff's argument is without merit.  The ALJ explicitly assigned only partial weight to the opinion of Ashok Kaul, M.D., the state-agency examiner, and he assigned great weight to the opinion of the consultative psychological examiner, Matthew P. Dickson, Ph.D., who opined that Plaintiff's abilities to respond appropriately to coworkers and supervision and to adapt to change and stress in the workplace were not impaired. (TR 27-29.)  "[T]he ALJ has the right to resolve conflicting respectable medical opinions." *Morreale v. Heckler*, 595 F. Supp. 907, 910 (E.D. Mich. 1984) (citing *LeMaster v. Weinberger*, 533 F.2d 337, 349 (6th Cir. 1976); *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971)).  There is no error here.

Dr. Dickson opined that Plaintiff's "general cognitive abilities would not impair his ability to perform unskilled work-related behaviors not requiring academic skills." (TR 640.) Plaintiff argues that the ALJ erred by giving great weight to this opinion but not including the qualifier "not requiring academic skills" in the RFC assessment. (Docket no. 10 at 11-12.) This argument fails. As discussed above, the fact that the ALJ gave "great weight" to Dr. Dickson's opinion does not mean that he was required to adopt it wholesale. *See Alvarado, Irvin, supra*.

Plaintiff also argues that there are inconsistencies in the ALJ's RFC assessment. (Docket no. 10 at 10.) Plaintiff argues that the ALJ's assessment that Plaintiff can walk a total of 1 hour in an 8-hour workday is inconsistent with his assessment that Plaintiff can frequently lift and carry up to 10 pounds with his right upper extremity. Plaintiff argues that since carrying requires walking, the limitation that Plaintiff could walk no more than 1 hour a day precludes both frequent and occasional carrying with any weight. Defendant argues that Plaintiff advances no authority that supports his assertion that carrying can only be done while walking rather than moving items around a workstation while sitting or standing still. (Docket no. 11 at 18.) Defendant's argument holds merit. Plaintiff has not demonstrated an inconsistency or reversible error in this regard.

Plaintiff further argues that the ALJ's assessment that Plaintiff could only occasionally balance and should never be exposed to unprotected heights due to a possible difficulty avoiding dangerous conditions associated with fatigue from chronic kidney disease, sleep apnea, obesity, and limited mobility does not comport with the ALJ's assessment that Plaintiff could frequently tolerate exposure to moving mechanical parts. To the extent that this constitutes an inconsistency, any error is harmless. As discussed above, there is no indication that the surveillance system monitor position requires the use of moving mechanical parts.

The ALJ weighed the medical and non-medical evidence in conjunction with Plaintiff's subjective complaints and developed an RFC based on the evidence that he found to be consistent with and supported by the record.  The ALJ's RFC assessment should not be disturbed.

### 3.    The ALJ's Step-Five Determination

Plaintiff argues that the ALJ failed to meet his burden of providing evidence that demonstrates that there are a significant number of jobs in the national economy that Plaintiff can perform.  (Docket no. 10 at 13-16.)  Here, the ALJ included all of the limitations of the RFC in his hypothetical questions to the VE, and the VE testified that there were jobs available for a person with those limitations.  Specifically, the VE testified that there were 16,000 jobs nationally as a surveillance system monitor.  (TR 108.)  The ALJ then relied on the VE's testimony to determine that Plaintiff was not disabled because there were a significant number of jobs available that Plaintiff could perform.  (TR 30-32.)

Plaintiff contends that this one unskilled, sedentary job with approximately 16,000 jobs nationwide is insufficient to satisfy the ALJ's burden at step five.  First, Plaintiff argues that 16,000 jobs is not "a significant number of jobs."  The Sixth Circuit has found otherwise.  In *Taskila v. Comm'r of Soc. Sec.*, the court found that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'"  819 F.3d 902, 905 (6th Cir. 2016) (citing *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 579 (6th Cir. 2009) (2000 jobs); *Liskowitz v. Astrue,* 559 F.3d 736, 743 (7th Cir. 2009) (1,000 jobs); *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs); *Barker v. Sec'y of Health & Human Servs.,* 882 F.2d 1474, 1479 (9th Cir. 1989) (1266 jobs)).  Under this precedent, the 16,000 jobs identified by the VE in this matter is a significant number.

Plaintiff also argues that the VE's testimony regarding the availability of the surveillance system monitor position was equivocal when she testified that it was "probably going to be as close as [she could] get to a job within [the ALJ's] hypothetical in sedentary." (Docket no. 10 at 5; TR 108.) If this was all the VE had testified, Plaintiff's argument would hold some merit. However, the ALJ subsequently confirmed the VE's testimony:

> Q       So, for this hypothetical, are there any sedentary jobs they could do?
>
> A       I would say that the individual, based on the hypothetical you provided, could do this, could do the surveillance system monitor position, it is 379.367-010, there are 16,000 jobs nationally.
>
> Q       Sedentary, unskilled position?
>
> A       It is sedentary, and it is unskilled.

(TR 108-09.) Thus, the VE's testimony regarding the surveillance system monitor position was not equivocal, and the ALJ did not err by relying upon it at step five.

Lastly, Plaintiff argues that the requirements of the surveillance system monitor position do not fit within his RFC. (Docket no. 10 at 14-16.) He argues that the reasoning level of 3, math level of 1, and learning level of 3 associated with the position all require skills or functions that exceed Plaintiff's RFC. For example, Plaintiff asserts that a reasoning level of 3 requires the worker to apply common sense understanding to carry out instructions furnished in written, oral, and diagramic form and deal with problems involving several concrete variables in or from standardized situations. Plaintiff asserts that that the VE should have provided jobs with a reasoning level of 1, which require only common sense understanding to carry out simple one- or two-step instructions.

But Plaintiff did not object to or seek clarification of the VE's testimony regarding this issue at the administrative hearing. *See Drake v. Colvin*, No. 1:13cv694, 2014 WL 4659487, at

*4-5 (M.D.N.C. Sept. 17, 2014) (citing *Howard v. Astrue,* 330 F. App'x 128, 130 (9th Cir. 2009))
(plaintiff's failure to object to the form of ALJ's hypothetical question at the hearing level
constitutes waiver of the right to litigate the issue in court). *See also Bechtold v. Massanari,* 152
F.Supp.2d 1340, 1347 (M.D. Fla. 2001) ("[W]hen squarely presented with an opportunity to object
to the characterization by the administrative law judge of the nature of her past relevant
employment, [the plaintiff] failed to do so. Such failure constitutes a waiver of her right to raise
the argument before this Court at this time."). Notably, Plaintiff's counsel did seek clarification
from the VE at the hearing on a similar issue regarding a copying position identified by the VE in
response to a different hypothetical question. (TR 115-16.) But because Plaintiff's counsel did
not raise the instant issue at the hearing, Plaintiff's argument that he raises for the first time before
the court is waived. Plaintiff has not properly demonstrated that the ALJ erred in relying on the
VE's testimony to support his step-five determination or that the ALJ's step-five determination
was otherwise erroneous.

## VI.    CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary
Judgment (docket no. 10) and **GRANT** Defendant's Motion for Summary Judgment (docket no.
11).

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and
Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided
for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections
constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard
v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  February 16, 2019          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 16, 2019          s/ Leanne Hosking
                                   Case Manager