UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIDIAN SIMPSON,

     Plaintiff,                                 Case No. 17-cv-14098
                                                    Hon. Matthew F. Leitman

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER (1) SUSTAINING IN PART AND OVERRULING
IN PART PLAINTIFF'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION (ECF #13), (2) GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT (ECF #10), (3) DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (ECF #11), AND (4) REMANDING ACTION FOR
FURTHER ADMINISTRATIVE PROCEEDINGS**

     In 2016, an Administrative Law Judge (the "ALJ") issued a decision

upholding the denial of Plaintiff Davidian Simpson's application for supplemental

security income benefits ("SSI"). The ALJ carefully considered the evidence of

Simpson's physical and mental limitations and crafted a very restrictive residual

functional capacity ("RFC"). In fact, the RFC was so restrictive that impartial

Vocational Expert Stephanie Laurie (the "VE") identified only *one* job in the

national economy – a surveillance system monitor – that could be performed by a

person with the RFC's mental and physical limitations. Based upon the VE's

testimony, the ALJ ruled that Simpson was not disabled because he could work as a surveillance system monitor.

Despite the ALJ's care in crafting the RFC, this Court cannot sustain his disability determination. The Social Security Administration's administrative rulings required the ALJ to inquire into and consider whether there was a conflict between (1) the VE's testimony that a person with Simpson's RFC could work as a surveillance system monitor and (2) information concerning the requirements of that job in the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO")[1], and it is not clear from the administrative record that the ALJ undertook this required inquiry.

This gap in the record cannot be dismissed as a harmless error because there appears to be potentially substantial tension between the mental/cognitive limitations in Simpson's RFC and the mental/cognitive qualifications required for the surveillance monitor position as described in the DOT and SCO. By way of example, the RFC limits Simpson to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirement, involving only simple, work related decisions and routine work place changes." (Admin. R., ECF

---

[1] The DOT is a publication that "provides 'information about jobs (classified by their exertional and skill requirements) that exist in the national economy.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (quoting 20 C.F.R. § 416.969). The SCO is a "companion" publication of the DOT. SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).

#8-2 at Pg. ID 59-60.) However, as explained in more detail below, under the DOT's guidelines, a surveillance system monitor must be able, among other things, to "[d]eal with problems involving several concrete variables in or form standardized situations"; to "[s]peak before an audience with poise … and confidence"; and to write "reports and essays." DOT App'x C. Other federal courts have recognized the potential conflict between a limitation in an RFC to "simple … work" and the mental/cognitive requirements that the DOT and SCO associate with the surveillance system monitor position. The ALJ therefore erred when he deemed Simpson not disabled without clearly addressing and resolving the tension between the mental/cognitive limitations in Simpson's RFC and the mental/cognitive requirements of the surveillance system monitor position under the DOT and SCO.

The proper course of action here is to remand this matter to the ALJ so that he may consider in the first instance (and on a more fully-developed record, if appropriate): (1) the extent of any conflict between the mental/cognitive limitations in Simpson's RFC and the mental/cognitive requirements of the surveillance monitor position as set forth in the DOT and SCO and (2) whether those conflicts preclude Simpson from being able to work as a surveillance system monitor. The Court respectfully disagrees with the contrary proposed disposition in the Report and Recommendation ("R&R") issued by the assigned Magistrate Judge. (*See* ECF #12.)

Accordingly, the Court (1) **SUSTAINS IN PART AND OVERRULES IN PART** Simpson's objections to the R&R (ECF #13); (2) **GRANTS** Simpson's motion for summary judgment (ECF #10) to the extent that he seeks a remand and **DENIES** the motion to the extent it seeks an immediate award of benefits; (3) **DENIES** the Commissioner's motion for summary judgment (ECF #11), and (4) **REMANDS** this matter to the Social Security Administration for further proceedings consistent with this Opinion and Order.

# I

## A[2]

On November 8, 2012, Simpson filed his application for SSI benefits (the "Application"). (*See* Admin. R., ECF #8-8 at Pg. ID 415-21.)  In the Application, Simpson alleged that he became disabled on January 1, 2001. (*See id.* at Pg. ID 430.) Simpson claims that he is unable to work due to sleep apnea, a learning disability, nerve damage, and carpal tunnel syndrome, among other conditions. (*See* Admin. R., ECF #8-9 at Pg. ID 462.)

## B

The Social Security Administration (the "SSA") initially denied Simpson's Application on May 1, 2013, on the ground that Simpson was not disabled. (*See*

___

[2] The Court recites only the facts relevant to the Objections.  A full description of the facts is available in the R&R.

Admin. R., ECF #8-4 at Pg. ID 178.) Simpson thereafter requested and received a *de novo* hearing before the ALJ. The ALJ held that hearing on September 4, 2014. (*See* Admin R., ECF #8-2 at Pg. ID 78.) Simpson and the VE testified at the hearing. (*See id.* at Pg. ID 79.) Simpson testified that, in addition to his various physical impairments, he stopped attending school when he was in the ninth grade, he never received his GED, and he could read and write "[v]ery little." (*See id.* at Pg. ID 86.) During the VE's testimony, the ALJ posed a variety of hypotheticals to the VE, and the VE then identified various jobs that individuals with the limitations included in each hypothetical could perform. (*See id.* at Pg. ID 107-10.) On December 22, 2014, the ALJ issued a written decision in which he affirmed the SSA's denial of benefits, and found, based on the VE's testimony, that there were jobs that existed in significant numbers in the national economy that Simpson could perform. (*See* Amdin R., ECF #8-4 at Pg. ID 197-212.)

Simpson sought administrative review of the ALJ's ruling with the SSA's Appeals Council (the "AC"). On April 14, 2016, the AC vacated the ALJ's decision and remanded the case for further proceedings before the ALJ. (*See id.* at Pg. ID 218-22.) As relevant here, the AC determined that the ALJ failed to comply with the requirements of Social Security Ruling 00-4p ("SSR 00-4p") – a ruling that

requires an ALJ to identify and address potential conflicts between a VE's testimony and job information in the DOT and SCO.[3] The AC explained that the ALJ:

> did not specifically address the apparent conflict between the vocational expert's testimony that the claimant could perform he representative occupations of sorter (DOT: 222.687-014), inspector (DOT: 559.687-074), and marker tagger (DOT: 209.587-034) and information in the Dictionary of Occupational Titles that indicates that those occupations are performed at the light level of exertion, which entails lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently.

(*Id.* at Pg. ID 220-22.) The AC then instructed the ALJ to adhere to the requirements of SSR 00-4p on remand:

> [B]efore relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of

---

[3] Social Security Ruling (SSR) 00-4p "clarifies [the SSA's] standards for the use of [VEs] who provide evidence at hearings before [ALJs]." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). In the ruling, the SSA established that:

> When a VE … provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative* responsibility to ask about any possible conflict between that VE … evidence and information provided in the DOT. In these situations, the adjudicator will:
> - Ask the VE … if the evidence he or she has provided conflicts with information provided in the DOT; and
> - If the VE's … evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.* at *4 (emphasis added).

Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id.* at Pg. ID 222.)

## C

Following remand from the AC, the ALJ held a second hearing on November 9, 2016. (*See* Admin. R., Hearing Transcript, ECF #8-3 at Pg. ID 113-56.) Simpson and the VE testified again at that hearing. (*See id.* at Pg. ID 114.) As at the first hearing, the ALJ posed several hypotheticals to the VE concerning whether individuals with different limitations could work any jobs in the national economy. The ALJ described the first hypothetical – the only one that is relevant here because the ALJ eventually adopted it as Simpson's RFC – as follows:

This individual could lift no more than 50 pounds occasionally with the right dominant upper extremity, up to ten pounds frequently with the right dominant upper extremity. In an eight-hour day they would be able to sit a total of seven hours, stand a total of three hours and walk a total of one hour. At one time, they would be able to sit up to two hours, stand up to 20 minutes and walk up to 20 minutes. They would be limited to frequent foot control operations. They could never climb ladders, ropes or scaffolds. The [sic] could occasionally climb ramps and stairs. Occasionally balance, top, kneel, crouch and crawl. The [sic] would be limited to frequent reaching, frequent overhead reaching, frequent handling of objects, fingering and feeling with the right dominant upper extremity. This individual could occasionally tolerate exposure to extreme cold and to extreme heat. They would be able to tolerate frequent exposure to wetness or humidity, frequent exposure to environmental irritants such as fumes, odors,

> dust and gases. And frequent use of moving machinery
> and operating a motor vehicle. They would be allowed to
> have exposure to loud noise. They could occasionally
> tolerate exposure to vibration. They would have to avoid
> all exposure to unprotected heights. Additionally, the
> work would be limited to simple, routine, repetitive tasks
> performed in a work environment free of fast paced
> production requirements, involving only simple, work
> related decisions and routine work place changes. There
> could only be occasional and superficial interaction with
> the public and co-workers.

(*Id.* at Pg. ID 140-41.)

The VE testified that this hypothetical individual could not perform any jobs at the medium or light exertion levels. (*Id*. at Pg. ID 141-45.) However, the VE did find one job that the hypothetical individual could perform at the sedentary level: "the individual, based on the hypothetical you provided, could do this, could do the surveillance system monitor position, it is 379.367-010, there are 16,000 jobs nationally." (*Id.* at Pg. ID 146.)

The ALJ never directly asked the VE whether this testimony was consistent with the information in the DOT and SCO concerning the requirements for the surveillance system monitor position. At one point during the hearing, the ALJ had this exchange with the VE:

> Q: Okay. So, the DOT does not have anything that you
> can use to apply to this specific residual functional
> capacity, correct?
>
> A: That is correct.

Q: So, you have no choice but to rely upon your professional experience and issue, or giving me an opinion regarding this residual functional capacity, correct?

A: That would be true.

(*Id.* at Pg. ID 146.) However, the ALJ and VE had this exchange *before* the VE testified that a person with Simpson's limitations could work as a surveillance system monitor (*see id.*), so this exchange could not have satisfied the ALJ's duty to confirm that there was no conflict between that testimony by the VE and the information in the DOT and SCO.

The ALJ concluded his questioning of the VE with the following exchange:

Q: Ms. Laurie, your testimony today, has it been covered by the DOT?

A: No, Your Honor. Not all of it. Information such of [sic] course of the level of your leg lifting, time off task, absences, dominant versus non-dominant lifting, overhead reaching, those would be based on my experience, not on variables that are found in the DOT.

(*Id.* at Pg. ID 152-53.) But, in this exchange, the ALJ did not clarify whether he was asking about conflicts with the VE's testimony and the DOT and SCO. Moreover, the VE's answer appears to focus only on the physical limitations, and the ALJ did not follow up and ask about any conflicts related to mental/cognitive limitations. Accordingly, in does not appear that the ALJ ever clearly questioned the VE about whether there was a conflict between the VE's testimony that a person with

Simpson's limitations could work as a surveillance system monitor and the information regarding that position in the DOT and SCO.[4]

## D

On December 27, 2016, the ALJ issued a written decision on Simpson's Application. (Admin. R., ALJ Decision, ECF #8-2.) The ALJ adopted an RFC that matched his first hypothetical to the VE (quoted above). Importantly, the RFC included substantial mental/cognitive limitations, including that Simpson's work be "limited to simple, routine, repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work related decisions and routine work place changes … [and that t]here could only be occasional and superficial interaction with the public and co-workers." (*Id.* at Pg. ID 59-60.) The ALJ then determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at Pg. ID 67.)

---

[4] The ALJ made other scattered references to the DOT during his questioning of the VE, but none of them even arguably relate to whether there was a conflict between the VE's testimony that a person with Simpson's mental/cognitive limitations could work as a surveillance monitor and the information about that job in the DOT and SCO. (*See,e.g.,* Admin. R., Hearing Transcript, ECF #8-3 at Pg. ID 143 (before VE testifies that a person with Simpson's limitations could work as a surveillance system monitor, ALJ asks VE about DOT provisions concerning loud noise); *id.* at Pg. ID 145 (before VE testifies that a person with Simpson's limitations could work as a surveillance system monitor, ALJ asks VE about DOT provisions concerning handling, reaching, and fingering); *id.* at Pg. ID 149 (ALJ asks VE about DOT provisions concerning exposure to heat and cold).)

In support of this conclusion, the ALJ cited the VE's testimony that an individual with these limitations could perform the job of a surveillance system monitor (DOT Code 379.367-010), "with approximately 16,000 jobs in the nation." (*Id.* at Pg. ID 68.) Because Simpson could work as a surveillance system monitor, the ALJ concluded that Simpson was not disabled. (*Id.* at Pg. ID 68-69.)

The ALJ also included some observations concerning SSR 00-4p in his written decision. He expressed his satisfaction that the VE's testimony matched the information in the DOT and SCO about the surveillance monitor position: "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupation Titles (DOT), including its companion publication, the Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles (SCO)." (*Id.* at Pg. ID 68.) The ALJ declared the VE's testimony to be consistent with the DOT and SCO even though he never clearly asked her whether it was consistent and even though the VE never testified that it was consistent.

Simpson sought review of the ALJ's decision with the AC. The AC denied his request for review on November 30, 2017. (*See* Admin. R., AC Denial, ECF #8-2 at Pg. ID 38-42.)

**E**

On December 20, 2017, Simpson filed this action in which he challenges the SSA's denial of benefits. (*See* Compl., ECF #1.) Simpson and the Commissioner then filed cross-motions for summary judgment. (*See* Simpson's Mot. Summ. J., ECF #10; Comm'r's Mot. Summ. J., ECF #11.)

In Simpson's motion, he challenged the denial of benefits on four grounds, including that the "Administrative Law Judge failed to meet his step five burden of providing evidence that demonstrates that other work exists in significant numbers in the national economy that the plaintiff [sic] can do, given his residual functional capacity, age, education, and work experience."[5] (Simpson's Mot. Summ. J., ECF #10 at Pg. ID 1524-27.) Simpson contended that the ALJ failed to meet his burden because "the 'surveillance systems monitor' job does not fit within his residual functional capacity." (*Id*. at Pg. ID 1525.)

Simpson noted that under the DOT, the surveillance system monitor job "requires a reasoning level of 3" and a "level 3 learning level." (*Id.* at Pg. ID 1525-26 (citing DOT No. 379.367-010).) Here, Simpson was referring to the General Education Development ("GED") scales that are included in the DOT's descriptions

---

[5] While Simpson raised additional arguments against the SSA's denial, this Court need not address those additional arguments since the matter can be resolved on this argument alone.

of occupations.[6] These scales "embrace[] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT App'x C. A GED Level 3 Reasoning requires:

> Apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id.*

> A GED Level 3 Language requires:
>
> Reading:
>
> > Read a variety of novels, magazines, atlases, and encyclopedias.
> >
> > Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.
>
> Writing:
>
> > Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.
>
> Speaking:
>
> > Speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice.

---

[6] The numbered scales in the DOT descriptions correspond to entries in the DOT's Appendix C that lists out the skills and capabilities required at each GED scale level.

*Id.*

Simpson argued that he could not work as a surveillance system monitor because the skills and capabilities required at Level 3 Reasoning and Level 3 Language "exceed [his] residual functional capacity." (Simpson's Mot. Summ. J., ECF #10 at Pg. ID 1526.) Thus, Simpson concluded, "no other work exists in significant numbers in the National economy that he can do," and the ALJ should have found him to be disabled. (*Id.* at Pg. ID 1526-27.) Simpson asked the Court to "enter[] a fully favorable Decision on his behalf, or, in the alternative, remand his claim to a different Administrative Law Judge for further consideration." (*Id.* at Pg. ID 1533.)

The Commissioner responded that "it is unavailing for [Simpson] to advance his mere law assertions that the surveillance system monitor occupation conflicts with his RFC." (*See* Comm'r's Mot. Summ. J., ECF #11 at Pg. ID 1559.) Furthermore, the Commissioner argued that Simpson "waived all such arguments by failing to pose them to the vocational expert during the administrative hearing." (*Id.*)

The Court referred the cross-motions to the assigned Magistrate Judge. On February 16, 2019, the Magistrate Judge issued the R&R in which she recommended that the Court deny Simpson's motion and grant the Commissioner's motion. (*See* R&R, ECF #12.) The Magistrate Judge did not reach the merits of Simpson's argument that "the requirements of the surveillance system monitor position do not

fit within his RFC." (*Id.* at Pg. ID 1582-83.) Rather, the Magistrate Judge concluded that Simpson waived this argument since he "did not object to or seek clarification of the VE's testimony regarding this issue at the administrative hearing." (*Id.*)

On February 20, 2019, Simpson filed the objections to the R&R (the "Objections"). (*See* Objections, ECF #13.) Among other things, Simpson "object[ed] to the Magistrate Judge's Report and Recommendation at pages 20-23, which finds that the Administrative Law Judge met the Commission's burden of providing substantial evidence at Step Five that there are a significant number of jobs in the national economy that the Plaintiff can still perform despite his impairments." (*Id.* at Pg. ID 1588.) The Commissioner filed her response to Simpson's Objections on February 28, 2019. (*See* Response, ECF #15.)

## II

### A

Where a party objects to a portion of a Magistrate Judge's R&R, the Court reviews that portion *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party has not objected. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**B**

In reviewing the disputed findings of an ALJ, the Court is limited to determining whether those findings are supported by substantial evidence and are made pursuant to proper legal standards. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "[A] court is obligated to remand for further administrative proceedings if there are any unresolved essential factual issues." *Meehleder v. Comm'r of Soc. Sec.*, 2012 WL 3154968, at *2 (E.D. Mich. Aug. 2, 2012) (citing *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994)).

**III**

**A**

In *Lindsley v. Commissioner of Soc. Sec.*, the Sixth Circuit Court of Appeals set forth the general "[s]tatutory and regulatory background" applicable to claims for social security disability benefits:

> To receive disability benefits under the SSA, an applicant must be "disabled" as defined by the Act. Individuals are "disabled" under the SSA if they are "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

Moreover,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The preceding statutory requirements have been distilled into a regulatory framework that sets forth a five-step sequential analysis used to determine whether a particular applicant for disability benefits is indeed "disabled." This court has summarized the regulatory framework as follows:

> The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as

17

> to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.
>
> *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citations omitted).

*Lindsley*, 560 F.3d 601, 601-03 (6th Cir. 2009).

At the fifth step in this analysis – the step at issue here – the ALJ may consider "reliable job information" in publications like the DOT. *Id*. at 603. "ALJs are also authorized to consider the testimony of so-called 'vocational experts' (VEs) as a source of occupational evidence." *Id*. (quoting SSR 00-4p, 2000 WL 189704, at *2.)

"On occasion, a VE's testimony conflicts with the information set forth in the DOT." *Id*. at 603. In order to ensure "that such actual or apparent conflicts are addressed, the Social Security Administration has imposed [ – through SSR 00-4p – ] an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.'" *Id*. (quoting SSR 00-4p, 2000 WL 189704 at *4). "ALJs must also 'obtain a reasonable explanation for … apparent conflicts' if the VEs evidence 'appears to conflict with the DOT.'" *Id*. (quoting SSR 00-4p, 2000 WL 189704, at *4.)

**B**

As explained in detail above, it is not clear from the record that the ALJ fulfilled his "affirmative duty" under SSR 00-4p to ask about and address potential conflicts between (1) the VE's testimony that a person with Simpson's limitations could work as a surveillance system monitor and (2) the provisions of the DOT and SCO concerning the requirement of that job. The ALJ's failure to clearly discharge his duty of inquiry and analysis here is not harmless because "a potential conflict actually exists [between the VE's testimony and the relevant provisions of the DOT and SCO], thereby undermining the reliability of the VE's testimony and the ALJ's ability to rely upon it." *Goulette v. Comm'r of Soc. Sec.*, 2013 WL 2371695, at * 11 (E.D. Mich. May 30, 2013) (adopting report and recommendation that surveyed cases within the Sixth Circuit addressing the harmless error test to be applied to a failure to satisfy SSR 00-4p).

The potential (if not clear) conflict between the VE's testimony and the DOT relates to the mental/cognitive requirements of the surveillance system monitor position. The VE testified that a person with Simpson's mental/cognitive limitations – including the ability to handle only "simple" tasks and to make only "simple" decisions – could function effectively as a surveillance system monitor. But the DOT provides that the surveillance system monitor position requires Level 3 language and reasoning skills. These skills include the ability to "deal with problems

involving several concrete variables in or from standardized situations"; the ability to write reports and essays; and the ability to read novels, magazines, and encyclopedias. DOT App'x C.  As a number of federal courts have recognized, there is a possible, if not actual, conflict between an RFC that limits an applicant to simple tasks and simple instructions (like Simpson's), on the one hand, and a position that requires Level 3 language and reasoning skills (like those the DOT associates with the surveillance monitor position), on the other hand. See *Keller v. Berryhill*, 2018 WL 6264813, at *4 (4th Cir., Nov. 29, 2018) (finding "an apparent conflict exists between a limitation to short and simple instructions and Reasoning Development Level 3 occupations").[7]  Indeed, the SSA has drafted an "internal [SSA

---

[7] The court in *Keller* provided an overview of other circuits that also found a conflict:

> Two other courts of appeals have reached the same conclusion we reach today.  In particular, the Ninth and Tenth Circuits have determined that an apparent conflict exists when a VE testifies that a claimant limited to simple instructions and tasks can perform Reasoning Development Level 3 jobs.  *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  Additionally, the Eighth Circuit has concluded that a limitation to "simple, concrete instructions" is "arguably inconsistent" with Level 3 jobs.  *See Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005); *see also Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (explaining that "tension exists between" limitation to "simple, concrete instructions" and Level 3 jobs).  *But see Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2004) (concluding that no conflict existed

memorandum" in which "the [SSA's] Director for the Division of Field Procedures advises Regional Chief ALJs that an apparent conflict exists between a limitation to simple tasks and Reasoning Development Level 3 jobs." [8] *Id.* Because there is a potential, if not actual, conflict between the VE's testimony that a person with Simpson's limitations could work as a surveillance system monitor and the DOT's description of the position as requiring Level 3 reasoning and language skills, the ALJ's reliance on the VE's testimony without complying with SSR 00-4p was not a harmless error.

Finally, the Court rejects the Commissioner's argument that Simpson waived or forfeited his argument that the ALJ failed to comply with SSR 00-4p. The

---

between no "complex technical work" restriction and Level 3 jobs).

*Id.* at *4.

[8] The memorandum states:

DOT rating for General Education Development (GED). We do not rely on these ratings to conclude whether a claimant can perform a particular occupation when we cite occupations that demonstrate the ability to do other work. *However, adjudicators should consider GED ratings that may appear to conflict with the claimant's RFC and the cited occupation(s); for example, an occupation with a GED reasoning level of 3 or higher for a claimant who is limited to performing simple, routine, or unskilled tasks.*

Soc. Sec. Mem. Ref. 09-2139, Dec. 28, 2009, available at https://skilltran.com/pubs/ssa_2009_ElectronicReferences.pdf (emphasis added).

Commissioner says Simpson waived the claim by failing to raise at the administrative hearing before the ALJ the possibility of a conflict between the VE's testimony and his RFC. (*See* Comm'r's Mot. Summ. J., ECF #11 at Pg. ID 1559.) This Court joins the many other federal courts that have rejected this waiver argument. *See, e.g., Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006); *Wright v. Colvin*, 2014 WL 3546538, at *2 (E.D.N.C. July 14, 2014); *Burton v. Astrue*, 2012 WL 1184425, at *4 (D. Me. Apr. 6, 2012) (report and recommendation), *adopted at* 2012 WL 1415616 (D. Me. 2012 Apr. 24, 2012). In *Prochaska*, the Seventh Circuit explained that a claimant's failure to raise the conflict issue at the hearing before the ALJ does not amount to a waiver of the issue because SSR 00-4p "places the burden of making the inquiry on the ALJ." *Prochaska*, 454 F.3d at 735. This Court agrees.

## IV

For the reasons stated above, **IT IS HEREBY ORDERED** that:

- Simpson's Motion for Summary Judgment (ECF #10) is **GRANTED** to the extent that it seeks remand to the SSA for further proceedings and **DENIED** in all other respects (including to the extent that it seeks an order requiring the SSA to assign the matter to a different ALJ on remand). On remand, the ALJ shall conduct the inquiry required by SSR 00-4p; shall identify any potential or actual conflicts between the VE's testimony and the applicable provisions of the DOT and SCO (identified above); and shall reconsider whether it is reasonable to rely on the VE's testimony and whether a person with Simpson's limitations can perform the job of surveillance system monitor.

- The Commissioner's Motion for Summary Judgment (ECF #11) is **DENIED**.

- Pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is **REMANDED** to the SSA for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 19, 2019


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 19, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764